Good morning, Amy. Just a moment, counsel, while we get settled here. Sure. No worries. All right, counsel, good morning. Good morning, and may it please the Court. My name is Yitzhak Zellman, and I represent the Plaintiff Appellant, Vanessa Chavez. I'd like to reserve four minutes for rebuttal, Your Honor. Thank you, counsel. Your Honors, this is a case involving a wrongful repossession. In Arizona, under the UCC, a secured creditor cannot proceed with a nonjudicial self-help remedy if there's a breach of the peace. In this case, Your Honors, Ford sent the repossession agent down to a grocery store parking lot in the middle of the afternoon where my client was shopping. Mr. Chavez, Robert Chavez, her husband, saw the repo man, confronted him, said, what are you doing? As soon as he heard it's a repo, said, you're not taking my car. Calls his wife out of the store, Mrs. Chavez. She confronts the repossession agent and says, you're not taking my car. Was there a breach of the peace at that point? Yes. How? Well, Your Honor, breach of the peace is an elastic concept, right? And we look to a variety of triggers to see which of those fit the circumstances in that case. There's a slew of case law, majority case law, across the country, which stands for the proposition that when there is a verbal objection, a verbal confrontation between the repo man and the debtor, the repossession must stop because it precedes. You're correct that some courts say that, but that's not the uniform rule. There are some courts that are pretty firm on the idea that a verbal objection standing alone is not enough. Isn't that correct? Absolutely, Your Honor. There's not a uniform rule. It is a majority and a minority position. So what happened after the Chavises said, stop, don't do this, what happened that constituted a breach of peace? Well, they object, right? She keeps saying over and over again. After they object. Right. The repo man says, I'm taking this car anyway. She calls Ford to see if they can stop it. She's on the phone. She's crying and pleading with them. They're not willing to stop it either. She goes back to the repo agent, her and her husband again, arguing with this guy, begging, please don't take the car, and he's like, I'm taking the car, and he ultimately repossessed the vehicle.  The repossession agent said he got it from the Chavises. She says she didn't hand it to them. Do we know how they got it? We don't. Many of these repossession companies, it's very easy to cut a new key. It's a lot when they need to. We don't know how they got it here. It is a dispute of facts. She says she didn't. It's not a matter of whether they cut a key or not. The facts that we have right now are that they wound up with the key. Sure. The repo people say she gave it to us, and what does she say? She does not remember giving it to them. Does she remember them taking it from her unwillingly? She did not recall the key being handed over at any point. That's a testimony. Go ahead. So, the point is, Your Honor, when the district court said, hey, I'm going to follow, I'm going to conclude as a matter of law that in Arizona, repossession in the face of oral opposition alone does not constitute a breach of the peace. He made two critical errors. The first, again, he said, I'm following the majority view on this. That is not the majority view. Can I ask you, what rule are you asking for? Are you asking for any oral opposition? You know, as soon as they came out, if they said, I'm taking the car, and they say, I object, right there, that's a breach of the peace, and they have to stop? I'm not arguing for any bright line rule at all. In fact, in the lower court on the defendant's motion for summary judgment, they said that a bright line rule would be antithetical to how the Arizona courts have addressed it. There hasn't been a bright line rule here, and I'm not asking for one today.  So, does your position depend on the nature of the exchange? Are you saying if the exchange is very heated, that could be a breach of the peace, but if it's just a disagreement over whether to take the car, that's not? What I'm saying is, the courts consider a number of factors. They're listed on page 18 and 19 of the respondent's brief, including verbal confrontation, threats of law enforcement, reactions of third parties, that kind of stuff. And what I'm saying is, as happened in, let's say, Rand v. Porsche, the jury should be allowed to determine. Apply these factors to these disputed facts and say, hey, under these circumstances, do we believe that there could be a breach of the peace? What facts are disputed here? Oh, I mean, all the facts are disputed. My client says she objected to repossession over and over again. That's not disputed. Yeah, the repossession agent says that never happened. Repossession agent says that never happened. Okay, if we take that in the light most favorable to her, she objected over and over again, would that constitute a breach of the peace? In combination with the fact that she's crying in a public parking lot trying to stop this, in combination with the fact that he grew very stern on her and raised his voice at her over and over again, I'm saying a reasonable jury can look at these facts and say that would be a breach of the peace, Your Honor, even under the defendant's preferred definition of the term, right? At some point in the exchange, the confrontation, I think you would describe it that way, but the exchange between the two, she made a phone call to Ford Motor Credit, is that right? Yes, Your Honor. In an effort to see if she could go in and bring the account current, correct? Yeah, they said she's behind 100 bucks and she said, I'll bring it tomorrow. Okay, how did she get the number to call FMC? I think she said she had it in her phone, if I recall the testimony correctly. Okay, I was under the impression that maybe the repo people gave it to her, but I could be wrong. My understanding, I think she had it in her phone. And at some point in the entire scenario, she was given an opportunity to retrieve her personal items from the car, correct? After the breach of the peace, Your Honor, after this confrontation, after he made it clear he's not listening to her. I'm trying to articulate my question in the best way I know how. After everything that you've described occurred, isn't it true she was allowed to get her personal items from the car? Yes. Okay, that's all I wanted to know. Consistent with the breach of the peace, they all of a sudden made nice again then after the breach? See, Your Honor, under the Arizona statute, a repossession Well, could you answer my question? Yes. Is that consistent with the breach of the peace that they peaceably went to her home to let her get her personal belongings? And the answer I was giving, Your Honor, was simply that the Arizona statute does not allow repossessions to proceed in breach of the peace. The second that peace is breached, it has to stop. If they make nice afterwards, if he apologizes afterwards, that's too late for that. We're trying to determine if there's a breach of the peace and we look at the totality of the circumstances. And so it's kind of incongruent to say there's a breach of the peace but yet they followed her to her home or however they got there for her to get her possessions out. If there were a breach of the peace, I don't see that as following naturally from a breach of the peace. Well, so again, let's look at what the appellees have provided on appeal In the response brief, they put forward a proposed definition of breach of the peace which is conduct that either disturbs the public tranquility itself or that can reasonably be expected to provoke another to do so. You can find that on pages 17, 18, 30, and 32 of their brief. When there are criminal cases involving breach of the peace, generally that's what you have. Some disorderly conduct or something that threatens the peace of the public. So that's kind of the common law or traditional view of what a breach of the peace is. And so, you know, we're trying to figure out how that fits within this statute. Certainly, and Your Honor, that's the point I'm trying to make. If that's the definition that applies, Your Honor, we should have been allowed to go to a jury and here's why. Courts across the country have recognized that a contested repossession, a confrontational repossession, when you're coming down and taking someone's car and they don't want you to take that car, they're begging you, please don't take the car. A lot of my clients are living out of those cars. This is how you get to the grocery store to get food or how to get to their job to keep a roof over their heads. Is this a hypothetical description of what happened in this case? I'm just talking about a confrontational repossession in general, Your Honor. When there's a confrontational repossession, courts recognize those. People living in their cars or using their cars to find groceries are not part of the fact pattern of this case, are they? I mean, in this case, she was at the store to get groceries. She was at the Safeway. Okay. But, Your Honor, what I'm trying to get at, courts across the country have agreed that these are inherently emotional, tense, and intense situations. That when a repossession continues over those objections, things can and often do go bad. And those are appellate judges and state court judges from across the country, including DiMari v. Riker in the Appellate Division in New Jersey in 1997, the Ford Motor Credit v. Ryan decision out of the Appellate Division in North Carolina, Ohio in 2010, the recent Lavallee v. Skyline decision out of the District of Massachusetts in 2025, and the less recent, but Sogin v. Alaska Federal Credit Union from the Western District of Washington in 2018, as well as the Hollybush and Gable decisions from the federal and state courts of Wisconsin. The point that I'm getting at, Your Honor, is that these are deeply emotional situations, and when you're ignoring the debtors' objections, you're ignoring a likely source of escalation that often can and does recover. I guess I'm having some of the same questions Judge Rollinson has, you know, when we look at what happened after, where the keys were handed over, there's not a claim that they were forcibly taken from her, and it seems like that is something she would recall if it had happened. And then unusually, I think, in all these cases, I mean, the cases all involve a little bit different facts, but the one fact that I didn't see in other cases is the repossession agents actually taking her back to her home so that she could have time to take the items out, which, you know, if it was a fraught situation, I don't see why they would ever consider doing that. I mean, it's a somewhat dangerous job to be repossessing items like this, and I think these people have their own self-interest in mind where they definitely don't want to be hurt or worse over this. But the fact that they went back to the house, let her have the time to remove items, doesn't that shed some light on the whole interaction? Your Honor, I think what you're getting into is whether or not the disputed facts are as they say or as we say, in terms of whether or not there was a confrontation. But the point is, under the law, once there is a confrontation, a breach, it stops there. The making nice afterwards doesn't allow you to push past all these objections and then say, oh, okay, but we're going to make it better for you now. Your position, I take it, is that when she said, don't repossess my car, or words to that effect, that was a breach of peace? Continuing to take the car once she said that was a breach of peace.  Anything else? Once they say, okay, I understand you don't want us to do this, we're taking it anyway, that's a breach of the peace. What I'm saying is a reasonable jury can look at those facts and say, even under their definition, that this could reasonably be expected to provoke a disturbance at a public tranquility, which is how they define breach of the peace, Your Honors. And again, here's what I'm getting at. I want to leave with this, Your Honor. How can the district court have said at summary judgment that this is not a breach of the peace and no reasonable jury could disagree with me? Nobody can find that this could disturb the public tranquility. When you have learned state and federal judges from the appellate and trial courts from across the country that have said yes, when you have this situation, you absolutely can conclude that there would be a breach of the public tranquility. That's not uniform. That's the problem. If every court had said that, you would have a stronger argument that they haven't. But we understand your argument. Do you want to save some time for rebuttal? The last 10 seconds, I'm just saying, it doesn't have to be uniform. It just means if all these judges can say so, then a reasonable jury here in Arizona can say that, too. And I'll save the rest for rebuttal. All right. Thank you, counsel. Thank you. Good morning, Your Honors. Good morning. My name is Tim Grimm, and I am an attorney for Western International Recovery Bureau, the appellees. May it please the Court, the question before this panel is very narrow, and it's whether the lower court erred when it found no evidence in the record that there was a breach of the peace when the appellant's car was repossessed over nothing more than her mere verbal protestations. That's it. Arizona answers that question, no. The national UCC majority rule answers it, no. And the district court below correctly refused to expand state law beyond these settled limits. What is the consequence, do you think, for future repossession actions of establishing a rule that says a verbal objection is not enough? There must be some breach of the peace, some action, some activity that constitutes a breach of the peace. What's the consequence of adopting a rule like that? Well, we're looking at the plain language of the statute, the self-help statute, that says you can do this if you can do it without a breach of the peace. I understand. If the only protestation is don't take my car, then I would submit there is no consequence. So if she throws herself on the hood of the car, we've got a breach of the peace? I would agree with that, yes. Okay, if she ties her arm to the door handle, that's a breach of the peace.  If she kicks the tires, that's a breach of the peace. I would agree. If she's abusive to the repossession agents, that's a breach of the peace. We're getting a little closer to the line, what is abusive? If they're abusive to her, dismissive of her, is that a breach of the peace? Again, close to the line. If they're merely dismissive, I would submit not. If they're swearing. If there's threatening language, is that a breach of the peace? I would think so, yes. And that's not what we have here. We're trying to see where the line is in your mind. Sure, that's exactly where I am with this. If all it is, is what you have in this case, don't take my car, I don't want you to take my car, and nothing more, there's no breach of the peace. Now, had she called the police? She was maybe a little more emotional, I know we're in court here, but she was probably a little more emotional than just don't take my car. You know, that's tough to tell on the record. From what we can tell on the record... She was crying, that's in the record, correct? That's emotion. The only time she was crying, though, was when she was on the phone with Ford. There's no evidence that she was crying at the repo guy. She was repeating, don't take my car. But there's no evidence that she was very emotional with him. In fact, the only evidence is from her testimony that he was very stern. And her husband described him as very strict. Can I ask you the same question I asked your friend on the other side? How did she get that number? Do you know? Does the record tell us? So, the record tells us that when she came out and said, don't take my car, the repo man stopped and handed her a card with a number on it, presumably Ford. That was my understanding. Thank you. But, yeah, if there is something more than just don't take my car, even if she had called the police, she had a phone, she could have called the police, now there's an escalation in the case law. All the cases, in fact, well, not all of them, 98% of them, one of the considerations is whether there's police involvement. She chose not to call the police. Had she stood behind her car and said, you're not taking my car, that would have been something more than don't take my car. But none of that is present here. I'm trying to imagine a continuing legal education conference where there are lawyers who represent secured creditors and those who represent insureds and what they're telling an audience of lawyers what to look for in a case or how to advise their clients on how to behave in a circumstance like this. Does the plaintiff bar say to the lawyers in the audience, your client's got to do something more than just object. Got to stand in the middle of and physically prevent throw herself on the hood of the car, take a swing at the repo agents? You see where I'm going. I do. And this is the kind of a fact pattern that lends itself well to the CLE analogy because you can come up with so many examples like that. On one end of the spectrum, you've got someone who intentionally doesn't pay on their car, they see the repo guy coming out, they open their window and yell, don't take my car. Okay, well, that's one extreme where you say the mere protestation is enough. On the other end is someone throwing themselves on the car. I'm trying to imagine your friend on the other side now that he's experienced this case, having a person in the same circumstance call him at the moment where the repo people are there to take the car and they're asking him, what do I do? What should his advice be? Throw yourself on the hood of the car, I think. You know, there are some of the cases that were cited by the appellant and even examined by the lower court. That happened where a repossession was coming and the person, the debtor, called their lawyer and the courts were holding, okay, now all of a sudden we have the lawyer telling the repo guy, don't take that car. Or at least advising the client, the debtor, don't take that car. Now we have something a little bit more than That's a breach of the peace in your mind. I wouldn't say it's a breach of the peace, but we're getting closer. And again, just looking at the facts in this case, all we have is don't take my car. Repeat it. Don't take my car. So, as you're aware from your eerie analyses, this panel's job is to predict what the Arizona Supreme Court might do in a case like this because there's very little guidance. So, the Arizona Supreme Court would start with the proposition that it must give effect to the self-help statute. And the self-help statute tells us that if there's a default, and the debtor here agreed that she knew she was behind on her payments, they can take possession of the collateral and do so without judicial process if it proceeds without a breach of the peace. We're not looking to speculate on could there be a breach of the peace. It's was there. And in this case, the appellant's advancing this idea that because all repos are fraught with emotion and they're somehow volatile, that any protestation should be enough to put the brakes on it because you then risk some breach of the peace. I think that goes too far. There's no evidence here that that happened and you can't assume that every repossession is somehow an emotional or volatile thing. And that certainly is not the case here. Does the record say anything about the practice of doing this not at the home? Because I know there's some cases that express concern with repossessions at homes. This was obviously done in a public place but does the record say anything about your client's practices in this regard? I don't recall that it does. Now there's a lot of the cases that describe that and one of the factors they're using is whether there's a trespass. So if someone has their car parked in their driveway and now the repo guy has to go onto the driveway and they protest and say don't take my car. Now you've got the protestation plus the trespass. So there's nothing in this case about that that I can recall. But the other case law talks about it. Would a trespass be a breach of the peace? I think you're getting closer and honestly from the cases that have been cited probably. If you have a trespass plus. No, if you just had a trespass, would that be a breach of the peace? Well in that case probably not. Because in order for there to be a breach of the peace you have to have a disturbance of the public quiet. And what you're talking about I think is Isn't a trespass a crime? Well, yeah, it can be. So wouldn't that be a breach of the peace if you commit a crime to conduct a repossession? I don't think so. Because a lot of the case law or some of the case law shows that certain things, certain crimes like a DUI can be a breach of the peace because the calamitous result that could come from it. But speeding is not held to be a breach of the peace even though it can also have calamitous results. So when you're talking about a trespass for instance, pulling up to someone's driveway to pull a car out of it you're kind of talking about a covert repossession where the debtor doesn't even know about it. So in that case, just like speeding is not necessarily a breach of the peace, I don't know that that would be a breach of the peace. Now as the Arizona Supreme Court would go forward and continue to analyze this one of the things they would analyze is, we've already talked about the statute and the plain language of that they would go into the objectives of the UCC as stated in UCC section 9-503 and that assigns purposes for the self-help statute. It tells us that the purpose of that statute is to benefit creditors in permitting them to realize collateral without resort to judicial process. To benefit debtors by making credit available at lower cost because the creditors don't have to go to court. And of course to support public policy discouraging extrajudicial acts by citizens. In that we have two that are militating for no breach of the peace in a case like this. We have one that says your primary concern should be safety we have two that says let's be reasonable about this. The Arizona Court would then look to Arizona cases and as you're aware there are not many on this topic. The Walker v. Waffle case was decided on different facts than those present here but the appellate court held that a breach of the peace amounts to the creditor showing some kind of constructive force, intimidation or oppression. I think we can agree there was none of that in this case. No fact here as the lower court pointed out suggested anyone involved in the repossession used constructive force, intimidation or oppression. So the Arizona Supreme Court would then move on to other jurisdictions. We're looking to see if in the process of the repossession was there a disturbance of the peace or quiet of a neighborhood, family or person by loud or unusual noise tumultuous or offensive conduct, threatening, traducing, quarreling challenging to fight or fighting or applying any violent, abusive or obscene epithets to another. I think we can agree that there was none of that in this case. The worst that we have is the appellate's testimony that there was a stern conversation which I would submit does not amount to a breach of the peace. The lower court in that endeavor considered five factors to determine whether a breach occurred which is where the repossession took place here at public parking lots. The debtor's express or constructive consent, which we may have constructive consent based on her handing the keys over and her making plans with her friend who was serendipitously in the parking lot and told him, hey my car is getting repossessed can you give me a ride home? And the reactions of third parties, there's no evidence of reactions of third parties here. The type of premises entered, there was no premise entered. And the creditor's use of deception, there was no deception here. As you pointed out, there are no facts that are in dispute in this case. The lower court's 16 page order it included a detailed recitation of the facts. And none of those are in dispute here. Nonetheless, the appellant repeatedly mischaracterizes the facts in this case as tense and volatile. And there's no such support for that in the record. For example, we already discussed that the appellant claimed that she was crying. However, that's misleading. She only mentioned crying to the Ford people on the telephone. There's no record of her crying to the repo agent and, more to the point, there's no evidence of whether this crying was loud and wailing or silent. Ms. Chavez testified that she asked her friend Gary, who was serendipitously in the parking lot, to drive her home. Thus, she was making plans to accommodate the repossession. We discussed the fact that she got the keys to the repo guy voluntarily. And, by the way, the repo guy's testimony about this is unopposed. Ms. Chavez testified she has no idea how he got the keys. That means she doesn't know one way or the other. Ms. Chavez testified that she does not recall any foul language or physical contact, but the conversation was merely stern. There was no profanity, there was no insults, there was no threats. Based on this, we'd ask you to find that there was no breach of the peace and to uphold the lower court's order. All right. Thank you, counsel. Rebuttal. Thank you, Your Honors. I would say that just to take some of those in reverse order, the testimony at ER 49 was I did feel threatened. I felt threatened they were going to take my car even though I didn't want them to. When we talk about the civil Arizona Court of Appeals decision on this action, which is Walker v. Walthall from 1978, there was a breach of the peace found there by the Court of Appeals even though there was no objection, no confrontation whatsoever. The repo agent came down with a uniformed deputy and said the reason was to prevent anticipated violence and the Court of Appeals said that's still a breach of the peace because if we allowed this to happen, that would lead to the very volatile situations the UCC was meant to prevent. Judge Hawkins, you had a question about the consequences that would happen from a rule articulated upholding what the district court said, which is oral objection is not enough under the self-help statute. That's what's going to happen, Your Honor. It's going to lead to the very volatile situations that the UCC was meant to prevent. It's never been the rule in Arizona that those situations have to actually happen, not since the 70s from that Walker case and not now in 2026. We shouldn't be going backwards. It's not just that there was a stern conversation. The testimony is that he also raised his voice at Ms. Chavez when she continued to object. There was no constructive consent. She never said, this is okay, and you know what, you win. She objected until the moment he made it clear this is happening. One way or another, this is happening. Going back to that question about the CLE, what do we tell people? Do we tell people you need to fight the repo man? Is that the scenes we want to see playing out on the streets of Phoenix from now on? That's not the rule. It's not the rule now. It never has been the rule in Arizona, and it shouldn't be the rule going forward. That's basically what we're going to start telling people because people look to these courts for guidance. They don't have to fight people. As Judge Hawkins said, they could just put their bodies on the car. That's not fighting. That's putting public safety at risk, Your Honor. Every time a court is considered, which one of those factors that my friend here just mentioned, the easy right to retake collateral or public safety, public safety wins every time. The courts I've cited to that, including the Supreme Court from Texas in the M. Bing v. Sanchez matter, but also going all the way back to Blackstone and his commentaries in the 1700s. They have an easy right to retake collateral, but not at the cost of public safety. They can get it another day. They know where these cars are at all times. I just want to make this point. There's GPS in these all modern cars that have GPS for the most part. That's how Ford knew how to send WIRB down to a random grocery store parking lot in the middle of the day. They called them and said, where's the car? They said, oh, it's over there, and they came to get it. But the other I mean, the statute does use breach of the peace. That has to mean something. Yes. Adopting the defendant's proposed definition, which is all over their brief, it doesn't mean that the tranquility was already disturbed. No one ever says that. Not the district court, not the defendants, and not in Walker, where the disturbance wasn't actually disturbed. No one was disturbed. There wasn't a confrontation. It just has to be reasonably expected to provoke someone to disturb the public tranquility. And that's what you have when you're taking people's cars and they don't want you to take them. All right. Thank you, counsel. Thank you, both counsel, for your arguments. The case is submitted for decision by the court that completes our calendar for the day and for the week. We are adjourned. This court has been adjourned.
judges: HAWKINS, RAWLINSON, BRESS